SEBASTIAN BONGIOVANNI and NORMA BONGIOVANNI, et al., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent. Bongiovanni v. Commissioner
Docket Nos. 7847-73--7851-73.
United States Tax Court
T.C. Memo 1976-131; 1976 Tax Ct. Memo LEXIS 273; 35 T.C.M. (CCH) 586; T.C.M. (RIA) 760131; April 26, 1976, Filed Max A. Reinstein and Thomas R. Dodegge, for the petitioners. Harmon B. Dow, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent has determined the following deficiencies in petitioners' Federal income tax: Docket
Taxable No.
(Petitioners)
Year
Deficiency
7847-73
Sebastian Bongiovanni and Norma
1968
$ 4,437.11
Bongiovanni
1969
3,309.44
7848-73
Lawrence Bongiovanni and Gerald-
1968
3,596.66
ine Bongiovanni
1969
3,026.68
7849-73
Bongi Cartage, Ill., an Illi-
1968
19,557.69
nois corporation
1969
15,199.76
7850-73
Vincent Bongiovanni and Josephine
1968
4,212.95
D. Bongiovanni
1969
3,156.85
7851-73
Sam Bongiovanni and Josephine
1968
3,859.55
Bongiovanni
1969
2,829.28
*275 Certain concessions having been made, the issues remaining for decision are: (1) Whether corporate petitioner's payments in 1968 and 1969 for the private nursing care expenses of its shareholders' mother were ordinary and necessary business expenses under section 162[2], and (2) Whether individual petitioners, the shareholders of corporate petitioner, received a constructive dividend when these medical expenses were paid by the corporation. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly.
At the time their petitions were filed herein, individual petitioners were residents of Illinois. They filed their respective returns with the district director of internal revenue, Chicago, Illinois for the taxable years in issue. Petitioner, Bongi Cartage, Inc., (Bongi Cartage) is a trucking and excavating business organized and existing as a corporation under the laws of Illinois. Its principal office was in Cicero, Illinois at the time its petition was filed herein. Bongi Cartage filed its corporate income tax return for the taxable year 1968 with the district *276 director of internal revenue, Chicago, Illinois, and its corporate income tax return for the taxable year 1969 with the internal revenue service center in Kansas City, Missouri. Petitioners Vincent, Sebastian, Sam, and Lawrence Bongiovanni, each of whom owned one-fourth of the issued and outstanding stock of Bongi Cartage during the years 1968 and 1969, are the sons of Mrs. Josephine C. Bongiovanni [3] (Mrs. Bongiovanni) who died in 1969 at the age of 88 years. From 1942 to 1962, Mrs. Bongiovanni received $10 per week as an employee of Bongi Cartage.She never held a corporate office and her husband, Carl Bongiovanni, was never associated with Bongi Cartage, having died prior to 1942. Mrs. Bongiovanni's duties at Bongi Cartage consisted of making coffee for the office help and visitors, preparing a light lunch for the four brothers and two or three of the office personnel, and cleaning up afterwards.In 1962, Mrs. Bongiovanni left Bongi Cartage because of illness and old age, and did not return. Her duties *277 were taken over by secretaries who received no increase in pay. On April 1, 1954, Bongi Cartage obtained a group insurance policy covering its salaried employees, [4] including Mrs. Bongiovanni. This policy was issued by John Hancock Mutual Life Insurance Company and included the following coverage: Life Insurance
$2,000
Accidental Death and
Dismemberment
2,000
Hospital Insurance
10 (Maximum daily
benefit)
Surgical Operation
10 (Maximum daily
benefit)
Mrs. Bongiovanni remained insured under this policy until her death in 1969. Mrs. Bongiovanni had no funds of her own and any medical expenses beyond those covered by the policy or by Medicare were paid by Bongi Cartage. During the years 1968 and 1969 Bongi Cartage paid medical bills of Mrs. Bongiovanni in the amounts of $32,527.74 and $26,305.72, respectively. These expenses were primarily for private nursing care, and the individuals rendering such nursing services billed Bongi Cartage directly.These expenditures were deducted on the corporate *278 income tax returns as business expenses under the classification, "Legal, Acct. Ser. and Dues." Since the late 1940's Bongi Cartage has had a policy of continuing to pay salaried employees during absences due to illness. With the exception of Mrs. Bongiovanni, however, no employee of Bongi Cartage has had his medical expenses paid by the corporation, except through the hospitalization insurance policy. The corporate minutes of Bongi Cartage do not reflect the existence of any pension plan or medical reimbursement plan for Bongi Cartage employees or the existence of any corporate resolution or intention to pay the medical expenses of Mrs. Bongiovanni or to compensate her for past services. OPINION Section 162 allows as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Section 1.162-10, Income Tax Regulations specifically provides that amounts paid or accrued within the taxable year for a sickness, accident, hospitalization, medical expense or similar benefit plan will be deductible *279 if the expenses are ordinary and necessary. Petitioners contend that the medical expenses paid by Bongi Cartage were pursuant to a medical reimbursement plan qualifying under section 105(e)[5] and are therefore expenditures properly deductible by the corporation. [6] Respondent, on the other hand, argues that Bongi Cartage did not have a plan providing for the corporate reimbursement of employee medical expenses. We agree with respondent. *280 While a section 105(e) accident or health plan need not be formal, or even written, and may discriminate between different classes of employees, it must nevertheless be a plan "or program, policy, or custom having the effect of a plan." Section 1.105-5, Income Tax Regulations; [7]John C. Lang,41 T.C. 352 (1963); Estate of Leo P. Kaufman,35 T.C. 663 (1961), affd. 300 F.2d 128 (6th Cir. 1962). An examination of the entire record here reveals no indication of any plan or policy to reimburse Bongi Cartage employees for their medical expenses. *281 Other than those payments made on behalf of Mrs. Bongiovanni, no medical expenses incurred by Bongi Cartage employees were reimbursed by the corporation. Moreover, there are no corporate records that suggest a policy of reimbursement. The absence of any plan or practice of reimbursement is underscored by the fact that while supervisory employees continued to draw their weekly salary during the time they were ill, these employees did not have their medical bills paid by the corporation beyond the limited coverage provided by the group insurance policy. Petitioners do not cite any instances of medical reimbursements other than Mrs. Bongiovanni but suggest that other employees in similar circumstances would be taken care of. In this vein, Vincent Bongiovanni testified that Bongi Cartage would also assist its old and faithful employees who suffered from a lack of funds. Nevertheless, such a vague intention, however laudatory, does not amount to a plan. This Court has repeatedly held that discretionary and ad hoc payments are outside the scope of section 105(e). John C. Lang,supra; *282 Estate of Leo P. Kaufman,supra.
After a careful review of the evidence, we conclude that Bongi Cartage's payments for Mrs. Bongiovanni's medical expenses were not made pursuant to a section 105 medical reimbursement plan. Petitioners, however, argue alternatively that the payments made for Mrs. Bongiovanni were part of a corporate wage continuation program. We believe that the record reflects an established policy on the practice of continuing to pay salaried employees their regular salaries during the time they were away from work due to illness. Having concluded that Bongi Cartage had a wage continuation program, the question is whether the payments made on behalf of Mrs. Bongiovanni were pursuant to that plan. The record compels us to conclude that the payments for Mrs. Bongiovanni's medical expenses were not part of Bongi Cartage's wage continuation program. The wages paid under the corporate wage continuation plan were paid to full time employees temporarily out of work. By contrast, the payments in issue were not made until 6 years after Mrs. Bongiovanni had discontinued her duties at the corporation. In 1962, it could fairly be said that Mrs. Bongiovanni, *283 at the age of 82, had retired. The payments made on her behalf in 1968 and 1969 were not made with a view to her return to work. These payments were of an entirely different character than the ones made under Bongi Cartage's wage continuation program. Moreover, these payments fall well outside the statutory contemplation of wage continuation payments. Cf. section 1.105-4(a)(3)(i)(A), Income Tax Regs.
Petitioners argue that the substantial sums expended for Mrs. Bongiovanni's medical care were made to compensate Mrs. Bongiovanni for the low wages she received during her period of employment. [8] *284 It is clear that an employer may pay an employee compensation in recognition of past undercompensated services, and that such payments are deductible by the employer if they are reasonable in amount. Lucas v. Ox Fibre Brush Co.,281 U.S. 115 (1930); American Foundry,59 T.C. 231 (1972). Even assuming that Mrs. Bongiovanni was undercompensated, however, there is no evidence that the payments of these expenses were intended as restitution for this undercompensation. Cf. Paula Construction Co., 58 T.C. 1055, 1058 (1972) affd. per curiam 474 F.2d 1345 (5th Cir. 1973). Furthermore, while petitioners make this contention in connection with their argument that the payments in issue were part of a wage continuation plan, the payments for Mrs. Bongiovanni bear no resemblance to the continuation of wages in any amount. The payments were made for Mrs. Bongiovanni's medical expenses. These payments did not take the form or the character of wages.The amounts paid were determined solely by the size of the medical expense and bore no relationship to the wages Mrs. Bongiovanni had been receiving from the corporation.Moreover, the nearly $60,000 in medical expenses paid by Bongi Cartage in 1968 and 1969 represents a sum well beyond Mrs. Bongiovanni's purported underpayments even as calculated by petitioners. [9] We believe that the payments of Mrs. Bongiovanni's medical expenses cannot be reasonably characterized *285 as part of Bongi Cartage's wage continuation program. If reasonable payments were made pursuant to a wage continuation program or plan of medical reimbursement qualifying under section 105, such amounts would ordinarily be deductible under section 162. The payment of Mrs. Bongiovanni's medical expenses was not made pursuant to either plan, nor can we perceive any other justification for deducting these expenses under section 162. A deductible business expense must have an origin in the taxpayer's business and it must be directly connected with or proximately resulting from a business activity of the taxpayer. Fred W. Amend Co. v. Commissioner, 454 F. 2d, 399 (7th Cir. 1971), affg. 55 T.C. 320 (1970). In the instant case, it cannot be said that the origin of and motivation for the payments for Mrs. Bongiovanni were business related. While Mrs. Bongiovanni was a former employee of Bongi Cartage she was not a major figure in *286 the corporation. She was already advancing in age when she began to perform her light duties at the company. It is most unlikely that her modest contributions formed the basis of such exceedingly generous treatment by Bongi Cartage. The cost to the corporation in relation to its income underscores the improbability of a business motivation for the payments.Bongi Cartage reported taxable income of $58,251.88 in 1968 and paid $32,527.74 for Mrs. Bongiovanni's nursing care in that year. In 1969, taxable income slipped to $23,863.60 while nursing care payments were $26,305.72. Realistically viewed, it can only be concluded that the origin of these payments was Mrs. Bongiovanni's status as mother of the four shareholders. Her four sons directed the corporation to pay for their mother's nursing care rather than making these payments in their personal capacity. While this is a refreshing example of filial responsibility that we see too little of these days, these expenses are no less personal because the payment was channeled through the corporation. We therefore find that Mrs. Bongiovanni's medical expenses were not ordinary and necessary business expenses of Bongi Cartage. *287 Having concluded that the payments on account of Mrs. Bongiovanni's medical expenses are nondeductible, we have no alternative but to find that these payments constituted a dividend to Bongi Cartage shareholders. Generally, a distribution of property made by a corporation to its shareholders out of its current or accumulated earnings and profits is a dividend, taxable to the shareholders as ordinary income. Sections 316(a), 301(c). Where a corporation assumes the cost of benefits which are personal to the shareholders, the sums expended for these benefits will ordinarily constitute a distribution taxable to the shareholders as a dividend. See Fred W. Amend Co.,supra;John L. Ashby,50 T.C. 409, 417 (1968). No formal declaration of a dividend is necessary. Hardin v. United States,461 F. 2d 865 (5th Cir. 1972). It is clear that in the instant case, the corporate payments were made to satisfy the personal wishes of Bongi Cartage shareholders that their mother receive the medical care which they considered desirable. We therefore *288 hold that the payments of Mrs. Bongiovanni's medical expenses by Bongi Cartage constituted dividend income [10] to the corporate shareholders. Since the shareholders hold equal interest in Bongi Cartage, and all agreed to and benefited by the payments made, they each constructively received an aliquot share of the dividend income. Decisions will be entered under Rule 155. Footnotes
1. The cases of the following petitioners are consolidated herewith: Sebastian Bongiovanni and Norma Bongiovanni, docket No. 7847-73; Lawrence Bongiovanni and Geraldine Bongiovanni, docket No. 7848-73; Bongi Cartage, Inc., an Illinois corporation, docket No. 7849-73; Vincent Bongiovanni and Josephine D. Bongiovanni, docket No. 7850-73 and Sam Bongiovanni and Josephine Bongiovanni, docket No. 7851-73.↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
3. Mrs. Josephine C. Bongiovanni is not to be confused with petitioner Josephine Bongiovanni (the wife of Sam) or petitioner Josephine D. Bongiovanni (the wife of Vincent).↩
4. The salaried employees were almost exclusively supervisory personnel. About one-half of the salaried employees were relatives of the Bongiovannis.↩
5. SEC. 105. AMOUNTS RECEIVED UNDER ACCIDENT AND HEALTH PLANS. (e) ACCIDENT AND HEALTH PLANS.--For purposes of this section and section 104-- (1) amounts received under an accident or health plan for employees, and (2) amounts received from a sickness and disability fund for employees maintained under the law of a State, a Territory, or the District of Columbia, shall be treated as amounts received through accident or health insurance. Generally, gross income will not include amounts received through accident or health insurance if such amounts are paid to the taxpayer to reimburse the taxpayer for expenses incurred by him for the medical care of the taxpayer, his spouse and his dependents. Secs. 104(a)(3), 105(a), and 105(b)↩. 6. Respondent apparently concedes that if Mrs. Bongiovanni's medical expenses were paid pursuant to an accident or health plan qualifying under sec. 105(e)↩ then Bongi Cartage would be entitled to deduct such payments as ordinary and necessary expenses.
7. Sec. 1.105-5. Accident and health plans. (a) In general.Sections 104(a)(3) and 105(b), (c), and (d) exclude from gross income certain amounts received through accident or health insurance. Section 105(e) provides that for the purposes of sections 104 and 105 amounts received through an accident or health plan for employees, and amounts received from a sickness and disability fund for employees maintained under the law of a State, a Territory, or the District of Columbia, shall be treated as amounts received through accident or health insurance. In general, an accident or health plan is an arrangement for the payment of amounts to employees in the event of personal injuries or sickness. A plan may cover one or more employees, and there may be different plans for different employees or classes of employees. An accident or health plan may be either insured or noninsured, and it is not necessary that the plan be in writing or that the employee's rights to benefits under the plan be enforceable. However, if the employee's rights are not enforceable, an amount will be deemed to be received under a plan only if, on the date the employee became sick or injured, the employee was covered by a plan (or a program, policy, or custom having the effect of a plan) providing for the payment of amounts to the employee in the event of personal injuries or sickness, and notice or knowledge of such plan was reasonably available to the employee. It is immaterial who makes payment of the benefits provided by the plan. For example, payment may be made by the employer, a welfare fund, a State sickness or disability benefits fund, an association of employers or employees, or by an insurance company. (b) Self-employed individuals. Under section 105(g), a self-employed individual is not treated as an employee for purposes of section 105. Therefore, for example, benefits paid under an accident or health plan as referred to in section 105(e) to or on behalf of an individual who is self-employed in the business with respect to which the plan is established will not be treated as received through accident or health insurance for purposes of sections 104(a)(3) and 105↩.
8. To support their argument, petitioners compare the minimum hourly wage scale with Mrs. Bongiovanni's salary during the relevant employment period. Jan., 1942 - June, 1945 - 30 cents per hour;
182 weeks @ $12 Assuming a 40-hour week.
*↩ per week equals
$ 2,184
June, 1945 - Jan., 1949 - 40 cents per hour;
182 weeks @ $16 * per week equals
2,912
Jan., 1949 - March, 1956 - 75 cents per hour;
377 weeks @ $30 * per week equals
11,310
March, 1956 - June, 1961 - $1 per hour;
273 weeks @ $40 * per week equals
10,920
June, 1961 - December, 1962 - $1.15 per hour;
78 weeks @ $46 * per week equals
3,588
Total
$40,914
Wages paid to Mrs. Josephine C. Bongiovanni
for the above period: 1,092 weeks @ $10 per week equals
$10,920
Underpayment difference
$29,994
9. Even petitioners' figures fall far short of the nearly $60,000 in medical expenses paid by Bongi Cartage in 1968 and 1969.↩
10. Petitioners concede there are sufficient earnings and profits to support dividend treatment for the amounts in question.↩